IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MAYNARD McCALLISTER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-457-NJR |
| | ) |
| **WEXFORD HEALTH SOURCES, INC., WARDEN WILLIS, ROB JEFFREYS, SIDDIQUI, ANGELA CRAIN, YVETTE BAKER, JOHN DOE SGT., DR. CALDWELL, and LAWSON,** | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Maynard McCallister, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint (Doc. 1), McCallister alleges Defendants were deliberately indifferent to the conditions of his cell and injuries he suffered due to a collapsed bunk bed. He asserts claims against the defendants under the Eighth Amendment and Illinois state law.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

McCallister makes the following allegations in the Complaint (Doc. 1): He is currently housed at Menard, which he describes as old and dilapidated (*Id.* at p. 3). The ceilings leak when it rains, there is no ventilation system making it extremely cold in the winter and hot in the summer. There is dust, lint, mold, and other materials which blow throughout the cellhouse causing McCallister to sneeze, cough, and have itching eyes (*Id.*). The power goes out often, and McCallister is forced to sit in his cell without power for hours (*Id.* at p. 4). The water and toilet keep breaking, and it takes months for a work order to be processed to fix the issues (*Id.*). McCallister has been deprived of water to wash himself and his hands, and he is not able to dispose of his waste in the toilet (*Id.*). There is an infestation of several bugs, spiders, mice, and roaches (*Id.* at p. 5). The insects bite McCallister and wake him in his sleep. The vermin and insects also get into his food. The exterminator does not spray inside the cells or the area behind the cells. The water that McCallister drinks smells like sewage and feces and on other days like bleach (*Id.* at pp. 5-6). When it rains, the facility floods and shuts down denying him outside access (*Id.* at p. 6). His cell is designed for one inmate, but he is housed with a second inmate due to overcrowding (*Id.* at pp. 6-7).

McCallister alleges that Defendants Willis, Jeffreys, Siddiqui, and Crain are required to collaborate and regularly inspect the prison to make sure it is suitable for living (*Id.* at p. 7). They are also required to write a monthly report on the conditions of

the prison and cellhouses (*Id*.). Defendants have failed to conduct the inspections (*Id*. at p. 8). McCallister alleges that because Defendants failed in their duty to inspect the prison, the chain on the top bunk snapped and the bunk, which McCallister estimates is 50 to 60 pounds, and an inmate on the bunk fell on McCallister, injuring him (*Id*.). McCallister alleges that Defendants are aware of these conditions due to the number of grievances and lawsuits filed by other inmates (*Id*. at p. 9).

Immediately after the collapse of the bunk on McCallister, he called for help, and John Doe Sergeant and Lawson approached his cell (Doc. 1, p. 10). Even though McCallister called for a med-tech and/or nurse, they did not bring either. Instead, they handcuffed McCallister. Although he continued to ask for care, John Doe Sergeant and Lawson denied him access to medical care (*Id*.). Instead of receiving care, McCallister was placed in another cell where he wrote a sick call slip and wrote an emergency grievance (*Id*. at p. 11). He asked for an x-ray of his neck. He made several sick call requests and spoke to nurses as they made rounds. McCallister suffered from head, neck, back, and shoulder pain, blurred vision, nausea, dizziness, and light sensitivity (*Id*.). The medical stuff ignored his issues and told him to write a letter to Wexford, Siddiqui, and Crain for care (*Id*.). McCallister alleges he wrote all three on two separate occasions (*Id*. at pp. 11-12).

On July 30, 2020, McCallister wrote an emergency grievance. Defendant Willis did not review the grievance until August 4, 2020 (*Id*. at p. 12). McCallister identifies Willis, Jeffreys, Siddiqui, and Crain as policy makers at the prison, and he alleges they have instituted a policy allowing non-medical staff to answer medical grievances and

determine the medical needs of inmates (*Id.*). He alleges that Willis and Baker responded to his grievance despite it being a medical issue (*Id.* at pp. 12-13). Willis and Baker made decisions about McCallister's medical grievance and made an assessment of his medical needs (*Id.* at p. 13). McCallister acknowledges that they labeled his grievance an emergency, although he alleges it took until November 6, 2020, to finalize the grievance (*Id.*). They told him to utilize the sick call process. McCallister alleges that they know there are issues with sick call requests not being responded to but that they did nothing to fix the issues (*Id.* at p. 13).

McCallister alleges that Wexford has a policy of understaffing the Menard Healthcare Unit, and due to both understaffing and overcrowding of the prison, there is a breakdown in services which caused McCallister to be denied medical care (*Id.* at p. 14). McCallister points out there are only two doctors and three nurse practitioners for 2,000 inmates (*Id.*). This understaffing delayed McCallister's medical treatment for his injury (*Id.*). He also alleges Wexford has a policy of only providing over-the-counter, generic medications—even when informed by an inmate that the medications are not alleviating the pain (*Id.* at p. 15). The staff are trained to continue with the ineffective medication to save money (*Id.*). McCallister alleges he spoke with Dr. Caldwell, but he treated McCallister like a nuisance and asked if he was lying and faking his pain (*Id.*). Dr. Caldwell then denied him a request for a different treatment.

McCallister alleges he wrote numerous letters ("kites") and grievances to Siddiqui and Crain requesting medical care (*Id.* at pp. 16-17). But medical staff treat him as a nuisance. He believes this is due to a policy and practice of Wexford to treat inmates who

complain as a nuisance. He was told by Dr. Caldwell that he would not receive anything stronger than Tylenol or Ibuprofen because Wexford's Collegial Review would not approve it (*Id.* at p. 17).

## Discussion

Based on the allegations in the Complaint (Doc. 1), the Court finds it convenient to divide the *pro se* action into the following eight counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Willis, Jeffreys, Siddiqui, and Crain for the conditions McCallister experienced at Menard and his broken bunk bed.

**Count 2:** Eighth Amendment deliberate indifference claim against John Doe Sergeant and Lawson for failing to provide McCallister with medical care after his injury from the broken bunk bed.

**Count 3:** State Law Intentional Infliction of Emotional Distress claim against John Doe Sergeant and Lawson for failing to provide McCallister with medical care after his injury from the broken bunk bed.

**Count 4:** Eighth Amendment deliberate indifference claim against Siddiqui and Crain for failing to provide him with medical care.

**Count 5:** Eighth Amendment deliberate indifference claim against Willis and Yvette Baker for responding to his medical grievances and telling him to submit a sick call request.

**Count 6:** Eighth Amendment deliberate indifference claim against Willis, Jeffreys, Siddiqui, and Crain for creating a policy allowing non-medical staff to respond to grievances.

**Count 7:** Eighth Amendment deliberate indifference claim against Wexford for having the following policies which delayed McCallister's care: understaffing the healthcare unit, only allowing over the counter pain medications, treating

>      inmates who complain as a nuisance and refusing them
>      care.
>
> **Count 8:**    **Eighth Amendment deliberate indifference claim against Dr. Caldwell for refusing to provide McCallister with stronger pain medications or different care.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

### Count 1

Simply put, McCallister fails to state a claim for deliberate indifference in Count 1. Although he describes a number of conditions he faced at Menard, including his broken bunk, he fails to allege that Defendants were aware of the particular conditions in his cell. He alleges that they should have been aware due to the numerous grievances and lawsuits that other inmates have written and because they failed to conduct inspections of the cells as required. But it is not enough that Defendants should have known about the conditions; McCallister must allege that they had knowledge of the conditions and disregarded them. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (The relevant inquiry is whether defendants "actually knew about [Plaintiff's] condition, not whether a reasonable official should have known."). Further, he fails to allege that he informed any

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Defendant about the specific conditions that he faced. Accordingly, Count 1 is **DISMISSED without prejudice**.

### Medical Care Claims (Counts 2, 4, 5, 6, and 8)

McCallister does state viable claims for deliberate indifference against John Doe Sergeant and Lawson (Count 2), Siddiqui and Crain (Count 4), and Dr. Caldwell (Count 8). *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment).

McCallister fails, however, to state a claim against Willis and Baker in Count 5. Although he alleges that Willis and Baker responded to his grievance when they should not have because they lacked medical knowledge and that they improperly denied his grievance, the mere mishandling or denial of a grievance does not state a claim for deliberate indifference. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). Similarly, McCallister's Count 6 regarding the policy of allowing non-medical staff to respond to grievances does not amount to deliberate indifference.

### Count 3

In addition to his Eighth Amendment claim against John Doe Sergeant and Lawson, McCallister alleges that their failure to provide him with medical care also states an intentional infliction of emotional distress claim under Illinois state law. To state such a claim, McCallister must allege (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress;

7

and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Vill. Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017); *see also Bailey v. City of Chicago*, 779 F.3d 689, 696–97 (7th Cir. 2015). Here, McCallister alleges John Doe and Lawson deliberately did not provide him care in order to cause him further suffering and pain. Liberally construing the Complaint, McCallister states a viable claim in Count 3.

## Count 7

McCallister also states a viable deliberate indifference claim against Wexford for the policies identified by McCallister. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

## Pending Motions

As to McCallister's motion for counsel (Doc. 2), he states that he has sent letters to multiple law firms and he does not understand the law or litigation process. He states that he has been assisted by another inmate in proceeding with his case so far. Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel … cannot be gauged.").[2] Further, counsel is not needed at this time because Defendants have not yet been served, and a discovery schedule has not been entered. Thus, McCallister's

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

motion for counsel (Doc. 2) is **DENIED**. He may renew his request for counsel at a later date.

## Disposition

For the reasons stated above, the following claims survive preliminary review: Count 2 against John Doe Sergeant and Lawson, Count 3 against John Doe Sergeant and Lawson, Count 4 against Siddiqui and Crain, Count 7 against Wexford, and Count 8 against Dr. Caldwell. Count 1 against Willis, Jeffreys, Siddiqui, and Crain, Count 5 against Willis and Yvette Baker, and Count 6 against Willis, Jeffreys, Siddiqui, and Crain are **DISMISSED without prejudice**. In order to help identify the John Doe Defendant, Warden Willis will remain in the case (in his official capacity only) to respond to discovery aimed at identifying the unknown defendant.

The Clerk of Court shall prepare for Defendants Lawson, Siddiqui, Angela Crain, Dr. Caldwell, Warden Willis (official capacity only), and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by McCallister. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

9

If a defendant can no longer be found at the work address provided by McCallister, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**. Because Warden Willis is only in the case for purposes of identifying the John Doe Defendant, he need not file a responsive pleading. He will be provided with further instructions for responding to discovery related to the John Doe Defendant at a later date.

If judgment is rendered against McCallister, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, McCallister is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to

comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 28, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**