IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MAYNARD McCALLISTER,                     )
                                         )
          Plaintiff,                     )
                                         )
vs.                                      )          Case No. 21-cv-457-NJR
                                         )
                                         )
ANGELA CRAIN, DANIEL LAWSON,             )
SHANE NITZSCHE, ANTHONY                  )
WILLS, MOHAMMED SIDDIQUI,                )
REYNAL CALDWELL, and WEXFORD             )
HEALTH SOURCES, INC.,                    )
                                         )
          Defendants.                    )

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Maynard McCallister, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Amended Complaint, McCallister alleged Eighth Amendment and state law claims against Defendants stemming from injuries related to a broken bunk bed.

This matter is before the Court on summary judgment motions filed by Angela Crain, Daniel Lawson, Shane Nitzsche, and Anthony Wills (Docs. 44, 45) and Dr. Mohammed Siddiqui, Dr. Reynal Caldwell, and Wexford Health Sources, Inc. (Docs. 46, 47). Defendants argue that McCallister failed to exhaust his administrative remedies against them prior to filing suit. McCallister filed responses to both motions

1

(Docs. 62 and 61, respectively). Defendants Caldwell, Siddiqui, and Wexford filed a reply brief (Doc. 67).

### FACTUAL BACKGROUND

On May 6, 2021, McCallister filed his *pro se* Complaint alleging that the defendants were deliberately indifferent to the conditions of his cell and injuries he sustained due to a collapsed bunk bed (Docs. 1, 10). He was initially allowed to proceed on claims under the Eighth Amendment and Illinois state law (Doc. 10). McCallister was later assigned counsel and granted leave to amend his Complaint (Docs. 32, 54). He was allowed to proceed on the following claims set forth in his Amended Complaint:

Count 1:     Eighth Amendment deliberate indifference claim against Nitzsche for failing to seek prompt and adequate medical care for McCallister after the bunk collapse.

Count 2:     Eighth Amendment deliberate indifference claim against Lawson for failing to seek prompt and adequate medical care for McCallister after the bunk collapse.

Count 3:     Eighth Amendment deliberate indifference claim against Dr. Siddiqui for ignoring McCallister's request for medical treatment.

Count 4:     Eighth Amendment deliberate indifference claim against Crain for ignoring McCallister's request for medical treatment.

Count 5:     Eighth Amendment deliberate indifference claim against Caldwell for providing McCallister with ineffective pain relief and refusing alternative medication.

Count 6:     Eighth Amendment deliberate indifference claim against Wills for maintaining a policy or custom of understaffing medical personnel and failing to alter or improve the nurse sick call protocol.

| | |
|---|---|
| Count 7: | Eighth Amendment deliberate indifference claim against Wexford for maintaining policies which: understaffed the health care unit, allowed only ineffective over-the-counter pain medications to be prescribed, and treated inmates seeking care as a nuisance and failing to provide them with adequate care. |
| Count 8: | State law intentional infliction of emotional distress claim against Nitzsche. |
| Count 9: | State law intentional infliction of emotional distress claim against Lawson. |
| Count 10: | State law willful and wanton misconduct claim against Nitzsche. |
| Count 11: | State law willful and wanton misconduct claim against Lawson. |
| Count 12: | State law willful and wanton misconduct claim against Caldwell. |
| Count 13: | State law willful and wanton misconduct claim against Siddiqui. |

(Doc. 60).

At the time that McCallister sustained his injuries, McCallister's Amended Complaint alleges that he was housed at Menard in a cell that contained bunk beds (Doc. 60, p. 4). Above the single bed in each cell, Menard officials installed a second bed, fastened to the wall with a metal chain (*Id.*). McCallister alleges that installation of the bunk beds was designed to accommodate the number of inmates housed at Menard. McCallister further alleges that Menard was severely overcrowded and dilapidated (*Id.*).

On July 30, 2020, McCallister was sitting in his cell on the bottom bunk when the metal chain securing the top bunk to the wall broke (*Id.*). The top bunk, which weighed

3

approximately 75 pounds, and McCallister's cellmate, who weighed approximately 220 pounds, both fell on McCallister, crushing him into the bottom bunk. McCallister alleges that Lawson and Nitzsche delayed access to medical care directly after the incident and in the days that followed, despite McCallister suffering from severe pain, blurred vision, nausea, dizziness, and light sensitivity (*Id*. at pp. 5-7). Despite submitting sick call requests and making requests from nurses during rounds, McCallister alleges he was not referred for medical treatment until August 3, 2020 (*Id*. at p. 7). McCallister blamed this delay on policies, customs, and practices of Wexford, Wills, and Dr. Siddiqui (*Id*. at pp. 7-8). Although McCallister was eventually seen by medical personnel, he was not prescribed ibuprofen until August 7, 2020. The medication was ineffective in relieving his pain (*Id*. at p. 8). McCallister alleges that he continued to suffer from pain throughout 2020 and into 2021. Although he requested care and a more effective pain medication from Dr. Caldwell, his requests were denied (*Id*. at p. 9).

On July 30, 2020, McCallister submitted an emergency grievance (Doc. 45-1, p. 4). The nature of the grievance was marked medical treatment and other: "top bunk fell on my head" (*Id*.). McCallister stated that at 6:00 p.m. on July 30, the top bunk broke and hit him in the head (*Id*.). McCallister indicated that he believed he was in shock and did not feel anything, but the next day his neck hurt and was hard to move (*Id*.). He also indicated his fear of the bunk falling on him again (*Id*.). He requested an x-ray and to see a doctor (*Id*.).

On August 4, 2020, Wills reviewed the grievance and marked it to be expedited as an emergency (*Id*.). On November 5, 2020, the grievance officer reviewed the grievance,

noting that the grievance had been marked as an emergency and received by the grievance office for processing on August 5, 2020 (*Id*. at p. 3). The grievance officer noted that he contacted the healthcare unit and McCallister did not submit a written request to nurse sick call for his neck injury or to see a doctor (*Id*.). The grievance officer instructed McCallister to submit a request for nurse sick call to obtain care for his injuries (*Id*.). The grievance officer concluded that proper procedures and protocols were followed, and the grievance was determined to be moot (*Id*.). The Chief Administrative Officer ("CAO") concurred with the findings on November 6, 2020 (*Id*.).

It is not entirely clear from the record when McCallister appealed the grievance as the offender appeal portion of the grievance appears to be blank (*Id*. at p. 3). McCallister attached a "reply to the grievance officer's response" to his grievance which he dated November 13, 2020 (*Id*. at p. 7). The Administrative Review Board ("ARB") received the grievance on November 30, 2020 (*Id*. at p. 5).

McCallister's attached reply indicated that his grievance was against John and Jane Does in the administrative, supervisorial, security, and medical positions who were in charge of promulgating, authorizing, training, and denying inmates access to medical care (*Id*. at p. 5). McCallister indicated he was denied access to medical care for an extended period of time after the incident with the falling bunk bed and that five of his medical request slips and oral requests for medical care were denied (*Id*.). He blamed "privy respondents" for unsafe living conditions at Menard which led to his injuries (*Id*. at pp. 5-6). He also blamed "privy respondents" for denying him access to medical care (*Id*. at p. 6). He specifically indicated that on July 30, he was injured by the broken bunk

bed, and from July 30 to August 3 he sought medical care to no avail (*Id.*). He submitted written requests and oral requests for care. He specifically asked for care from Anthony Willis, Yvette Baker, and John/Jane Does and made them aware of both his conditions and his need for medical care and he was refused any care until five days after the incident (*Id.*).

On March 1, 2021, the ARB reviewed McCallister's grievance (Doc. 45-1, pp. 1-2). The ARB labeled the grievance as medical in nature, noting that McCallister grieved the need for an x-ray of his neck (*Id.* at p. 1). The ARB returned the grievance without ruling on McCallister's allegations (*Id.* at p. 2). Instead, the ARB marked that the grievance was misdirected. Instead of marking that McCallister should contact his counselor regarding his issue, the ARB marked out counselor and wrote "healthcare" (*Id.*).

### LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that

6

'[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the

district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, McCallister was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq.* The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified

9

in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Because there are no disputes of material fact, the Court finds it unnecessary to hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Simply put, McCallister failed to exhaust his administrative remedies against Defendants. McCallister filed one grievance relevant to his claims on July 30, 2020. The grievance sought an x-ray and medical care for injuries stemming from the broken bunk bed (Doc. 45-1, p. 5). The grievance failed to identify any individual who denied McCallister care. In fact, the grievance failed to even indicate that he sought care for his injuries. Instead, McCallister indicated that he did not previously need care, suggesting that he might have been in shock and did not feel anything previously, but the day after the injury he felt pain and now needed medical care (*Id.*).

Although exhaustion is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722. The Illinois Administrative Code requires that an

10

inmate's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code §504.810(c). Although an inmate does not have to specifically identify the individual by name, he must include as much descriptive information as possible. *Id.*

Here, McCallister failed to identify any individuals in his grievance. Although his Amended Complaint alleged that he sought care initially from Lawson and Nitzsche, who he alleged ignored his requests for care, his grievance fails to indicate that he spoke to the officers. The grievance fails to indicate that he sought care from anyone at the prison. Despite McCallister's argument that a grievance seeking medical treatment clearly puts prison officials on notice that he was complaining of lack of medical care, there is simply nothing in the grievance that would put officials on notice that he asked any officer or staff member for care and was refused. Nor is there any suggestion that McCallister was experiencing difficulties in obtaining timely care.

In fact, the grievance makes clear that he only injured himself shortly before writing the grievance and initially did not think he needed care (Doc. 45-1, p. 4). McCallister argues that he could not include the denials and delays in his care in his grievance because those delays had not yet happened. That is correct because at the time he wrote the grievance, he had not even seen Dr. Siddiqui or Dr. Caldwell and could not have possibly referred to care that they provided. Thus, the grievance could not have served to exhaust staff and medical personnel that he had not yet seen. *See Palmer v. Fenoglio*, 510 F. App'x 476, 477-78 (7th Cir. 2013); *Mayo v. Snyder*, 166 F. App'x 845, 848

11

(7th Cir. 2006) (Grievance could not serve to exhaust medical care the inmate had not yet received). His grievance was simply a request for medical treatment rather than a complaint against any staff and was properly rejected by the ARB as a misdirected request for medical care.

McCallister argues that the appeal of the grievance put Defendants on notice of his claims. In appealing the grievance to the ARB, McCallister attached an additional document entitled "reply to the grievance officer's response" (Doc. 45-1, pp. 5-7). The "Reply" complained that McCallister had been denied access to medical care after his injury and noted that he submitted several written and oral requests for care to no avail. The "Reply" specifically mentions Anthony Wills and unidentified John/Jane Does in administrative, supervisorial, security, and medical roles at the prison (*Id*. at pp. 5-6). But the additional filing was only sent to the ARB and did not give the prison an opportunity to address McCallister's new allegations. When an inmate fails to properly use the grievance system, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Maddox*, 655 F.3d at 721; *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). But "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action." *Id*. at 722. *See also See Riccardo v. Rausch*, 375 F.3d 521, 523–24 (7th Cir. 2004).

Although McCallister's claims could have been considered exhausted if the ARB had ruled on the merits of his grievance and his "Reply," the ARB rejected the grievance on procedural grounds because his original grievance was a request for medical care rather than a grievance identifying a problem or complaint that could be fixed by prison officials. The ARB returned the grievance, noting a request for medical care should be directed to healthcare (Doc. 45-1, p. 2). Thus, the ARB properly rejected the "Reply" and McCallister's claims were unexhausted by his July 30 grievance.

McCallister also argues that the ARB's response was so opaque that it rendered the process unavailable, citing *Reid v. Balota*, 962 F.3d 325, 330 (7th Cir. 2020). In *Reid*, the Seventh Circuit found that the grievance officer provided conflicting messages and the ARB did not explain what missing documents needed to be resubmitted. But unlike in *Reid*, the Court finds that the responses to McCallister's grievance were clear. The grievance officer noted that there were no written requests to nurse sick call on file and that McCallister needed to submit a written request for a nurse sick call to have his issues addressed (Doc. 45-1, p. 3). Similarly, the ARB directed McCallister to contact the healthcare unit for care (*Id.* at p. 2). It was clear that McCallister should seek care first before filing a grievance.

Finally, McCallister argues that he did not have to file another grievance because he is not required to file multiple, separate grievances when the facts are the same. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2014) ("In order to exhaust their remedies, prisoners need not file multiple successive grievances raising the same issue."). But his first grievance was never exhausted and was rejected on procedural grounds. Further,

13

his subsequent issues with not receiving timely medical care or proper care were actual grievances about new issues that arose after his July 30 grievance. His original grievance never complained about any requests for care being denied nor did it attack the quality of the care. As McCallister notes in his response, "complaining about such delays before they occur is impossible." (Doc. 61, p. 5). He is correct. At the time he submitted his grievance, he had not sought care. He was merely making a request for care and, as such, the grievance was properly rejected as a misdirected request. Once McCallister actually experienced issues with his medical care, whether it be a denial or delayed request for care, or the quality of the care that he received, then he could have filed a grievance about those issues. Instead, he merely submitted a request for medical care which did not serve to exhaust any of his claims. Thus, he failed to exhaust his administrative remedies as to any of his claims.

Because McCallister failed to exhaust his claims prior to filing suit, his claims are **DISMISSED without prejudice**. To the extent McCallister also raised state law claims, the Court relinquishes jurisdiction of those remaining claims, and the claims are also **DISMISSED without prejudice**. *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 630-31 (7th Cir. 2016) ("When only state law claims remain after federal claims have dropped out of the case, the district court enjoys broad discretion whether to relinquish supplemental jurisdiction over the state law claims.").

## Conclusion

For the reasons stated, the Court **GRANTS** the summary judgment motions filed by Angela Crain, Daniel Lawson, Shane Nitzsche, and Anthony Wills (Docs. 44, 45) and

Dr. Siddiqui, Dr. Caldwell, and Wexford Health Sources, Inc. (Docs. 46, 47). McCallister's claims are **DISMISSED without prejudice** for failure to exhaust his administrative remedies. The Clerk is **DIRECTED** to close this case and enter judgment accordingly.

    **IT IS SO ORDERED.**

    **DATED:  August 1, 2023**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**